# IN THE COURT OF APPEALS OF IOWA

No. 25-0828
Filed September 4, 2025

IN THE INTEREST OF L.C.,
Minor Child,

B.G., Father,
    Appellant,

J.C., Mother,
    Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph Tofilon, Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Neven J. Conrad of Conrad Law Firm, Fort Dodge, for appellant father.

Jason T. Carlstrom of Carlstrom Law Firm, West Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law P.L.C., Clarion, attorney and guardian ad litem for minor child.

Considered without oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**BADDING, Judge.**

A mother and father separately appeal the termination of their parental rights to their child—born in 2022—under Iowa Code section 232.116(1)(h) (2025). They both challenge the statutory ground for termination and request more time to work toward reunification. Following our de novo review of the record, we affirm the juvenile court's ruling. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

## I.      Background Facts and Proceedings

In October 2023, the Iowa Department of Health and Human Services received reports that the mother "appeared to be experiencing psychosis related behavior" and that she assaulted the father in the child's presence. The child was initially allowed to remain in the mother's custody while she participated in voluntary services. But by December, the mother had stopped engaging in mental-health treatment. The department was also concerned about her sobriety. The child was removed from the mother's custody in early February 2024, placed with the father, and adjudicated as a child in need of assistance. However, placement with the father was short-lived because he let the mother have unsupervised contact with the child. So the department removed the child from the father's custody and placed him in foster care.

The next day, the mother entered an inpatient substance-use program. While there, she admitted that she had been using methamphetamine while caring for the child. The mother completed inpatient treatment at the beginning of June, and the department started a trial home placement with her later that month. But in July, the mother started missing her outpatient substance-use sessions and individual therapy appointments. She also tampered with a sweat patch, which

later tested positive for methamphetamine. The department ended the trial home placement in August and returned the child to his previous foster home.

Over the next several months, the mother continued using methamphetamine, as did the father. The mother had consistent visits with the child, which generally went well, but the father's interactions were sporadic. He refused to drug test for the department and did not obtain a substance-use evaluation until December. Although the evaluation recommended inpatient treatment, the father opted for outpatient services instead. But he only attended a few of those sessions, later telling the department's case manager "that he is a grown man and he's not going to change." The parents' relationship remained volatile, and the mother continued to neglect her mental-health needs.

The department's case manager recommended terminating the parents' rights in a January 2025 permanency report:

> [I]t is very clear the love that this family has for one another. However, there continues to be concern for substance use by both parents. [The mother] continues to allow [the father] into the home and not put appropriate boundaries in place. [The father] is not consistently participating in services. [The child] loves his mom and dad, and he loves the foster parent as well. Due to the ongoing substance abuse concerns for both parents and [the child's] length of time out of their care, it is this worker's belief, termination of parental rights is in [the child's] best interest.

The State filed its petition the next month. Five days later, the mother returned to inpatient substance-use treatment. She admitted that she had been drinking heavily and using methamphetamine that she stole out of the father's pockets while he was sleeping. The mother again did well in treatment, transitioning to a halfway-house status in March, which meant that she could get day passes out of the facility. Those passes allowed the mother to continue

working at her part-time job—although she also used them to spend time with the father, who was still using methamphetamine.

The juvenile court held a joint permanency and termination hearing in April, but at the end of the hearing, the parents objected to the combined proceedings. Because of the parents' objection, the court entered an order on permanency only, which denied their request for a six-month extension, and continued the termination hearing to May. Following that hearing,[1] the court terminated both parents' rights under Iowa Code section 232.116(1)(h) and denied their renewed request for more time. The parents each appeal that ruling.

## II.    Analysis

Although we normally apply a three-step analysis in conducting our de novo review of termination proceedings, we only address the steps challenged on appeal. *L.B.*, 970 N.W.2d at 313. Both parents' appeals are confined to the first step—whether the statutory ground for termination was established. *See id.* They alternatively request an extension of time in lieu of termination.[2] *See* Iowa Code §§ 232.104(2)(b), 232.117(5).

### A.    Statutory Ground

The parents each contest the final element of Iowa Code section 232.116(1)(h)(4), which requires "clear and convincing evidence that the

---

[1] The juvenile court granted the State's request to take judicial notice of the permanency hearing transcript. But because neither parent ordered that transcript, it is not part of our record on appeal.

[2] The parents also contend that the child should have been placed in a paternal aunt's guardianship. That issue was not raised in or decided by the juvenile court, so it is not preserved for our review. *See In re L.A.*, 20 N.W.3d 529, 533 (Iowa Ct. App. 2025).

child cannot be returned to the custody of the child's parents . . . at the present time." Our supreme court has interpreted "at the present time" to mean "at the time of the termination hearing." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

Starting with the mother, she argues that "there was no current safety concern having [the child] placed with [her] at the facility" because she was in a residential treatment facility and sober. But, as the juvenile court found, "physical placement in the semi-supervised setting of a treatment facility is not the same as custody." The case manager testified that although the mother "thrives in a structured setting," she struggles when she leaves:

> [The mother] starts to fall off with maintaining her mental health through therapy. She often forgets to pick up her medications, will miss her med management appointments. She will quit therapy entirely.
> . . . There is a pattern of domestic violence between [the mother and the father] and that creates chaos in [the mother's] life, and that is when she will start drinking. Her drinking then leads to methamphetamine use.

The juvenile court found the mother was "going through this familiar pattern right now," noting that while she was doing well in treatment, she "still has a long way to go." We agree. This was the mother's eighth or ninth attempt at the same treatment program she had completed before, only to later relapse. As our supreme court has concluded, "A long history of substance abuse, repeated relapses, and demonstrated inability to maintain sobriety outside a supervised setting demonstrates the child[ ] could not have been returned to [the mother's] care at the time of the termination hearing." *In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021); *see also L.A.*, 20 N.W.3d at 533 (finding a child could not be returned to the mother's custody when she was "stuck in a cycle of completing treatment

and then relapsing"). We accordingly find clear and convincing evidence supported the termination of the mother's parental rights under section 232.116(1)(h).

We reach the same conclusion for the father. Like he did in the juvenile court proceedings, the father maintains on appeal "that the mother should have [the child] returned to her care while he continues to provide support." But the father doesn't have standing to make that argument for the mother. *See In re C.T.*, No. 18-2199, 2019 WL 1055897, at *1 n.1 (Iowa Ct. App. Mar. 6, 2019) ("This court has consistently rejected challenges to termination of one parent's rights based solely on the assertion that the child could or should be returned to the other parent.").

As for the arguments that the father makes on his own behalf, we reject his contention that the State's evidence is speculative because "there are no drug testing results" for him. The reason there are no results is because the father refused to drug test for the department. We presume those missed tests would be positive for illegal substances. *See L.A.*, 20 N.W.3d at 533. In any event, the father acknowledged throughout the case that he was still using methamphetamine and marijuana. And other than inconsistent visits with the child, he failed to meaningfully engage in services. As a result, we agree with the juvenile court that the child could not have been safely returned to the father's custody at the termination hearing. *See In re A.B.*, 815 N.W.2d 764, 766 (Iowa 2012) (recognizing that "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children").

**B.      Extension of Time**

The parents next claim that instead of terminating their parental rights, the juvenile court should have granted their requests for an extension of time to work towards reunification.  The court declined to do so in its permanency order, finding:

> The father has continually used methamphetamine and marijuana throughout the pendency of this [child-in-need-of-assistance] case.  [The father] has put almost no effort into becoming sober and apparently has no interest in doing so.  He also exhibits little interest in parenting [the child].  The father just wants [the child] to live with [the mother] so he can drop in and out whenever he wants.   [The father] has done nothing to deserve six additional months.
> The mother at least has tried.  [She] has tried treatment on many occasions but none of those efforts have helped her stay sober for long.  She still suffers from poor mental health and has not been able to break her cycle of relapse. . . .  The Court cannot enumerate things that [the mother] will do differently this time to avoid relapsing again.  The mother has gone through the relapse-treatment-relapse cycle over and over again and there is no indication that the cycle will be broken anytime soon.

We agree with this reasoning, which the juvenile court adopted in its termination order.  An extension of time is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period."  Iowa Code § 232.104(2)(b).  Given the mother's history and the father's apathy, we are unable to reach that conclusion.  The child is thriving in his pre-adoptive foster home and has waited long enough for permanency.  *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up.").  We affirm the court's denial of the parents' requests for more time.

**AFFIRMED ON BOTH APPEALS.**